### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MATTHEW TODD BECK,
individually and on behalf of all
others similarly situated,

   **CLASS ACTION COMPLAINT**

   **DEMAND FOR JURY TRIAL**

  Plaintiff,

v.

GOHEALTH, LLC,
a foreign limited liability company,

  Defendant,

NORVAX, LLC,
a foreign limited liability company,

  Defendant,

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC., d/b/a FLORIDA
BLUE,
a foreign corporation,

  Defendant,

_____/

## CLASS ACTION COMPLAINT

  **COMES NOW**, Plaintiff Matthew Todd Beck (hereinafter, "Beck" or "Plaintiff"),

individually and on behalf of all others similarly situated, and sues GoHealth, LLC,

(hereinafter, "GoHealth"), Norvax, LLC (hereinafter, "Norvax"), and Blue Cross and Blue

Shield of Florida, Inc., d/b/a Florida Blue (hereinafter, "BCBSFL") (collectively referred to

as "Defendants") and alleges as follows:

## NATURE OF THE ACTION

  1.  This case concerns an illegal telemarketing scheme whereby Defendants and

their agents advertised the sale of health insurance through automated and prerecorded robocalls to the class member's telephone numbers without prior express written consent.

2.      Defendant's conduct violates the Telephone Consumer Protection Act, 47 United Stated Code, Section 227 *et seq*. (hereinafter, "TCPA") and the Federal Communication Commission's (FCC's) regulations, 47 C.F.R. § 64.1200(a).

3.      Beck brings this putative class action for statutory damages and injunctive relief under the TCPA on behalf of a class of similarly situated persons as more fully described herein.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction pursuant to 28 United States Code, Section 1331 and 47 United States Code, Section 227 *et seq.*

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district; Chicago, Illinois is the principal place of business for defendants GoHealth and Norvax and their actions giving rise to this claim occurred in this District.

## PARTIES

6.      Plaintiff Matthew Todd Beck is, and at all times mentioned herein was, an individual citizen of the state of Florida, who resides in St. Petersburg, Florida.

7.      GoHealth is a limited liability company formed under the laws of the state of Delaware, with its principal place of business at 214 W Huron St., Chicago, Illinois.

8.      Norvax is a limited liability company formed under the laws of the state of Delaware, with its principal place of business at 214 W Huron St., Chicago, Illinois.

9.      Both GoHealth and Norvax are managed by NVX Holdings, Inc., a Delaware

corporation with its principal place of business at 214 W Huron St., Chicago, Illinois.

10.     BCBSFL is a corporation formed under the laws of the state of Florida, with its principal place of business at 4800 Deerwood Campus Parkway, Jacksonville, Florida.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991 (TCPA), 47 UNITED STATES CODE, SECTION 227

11.     Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding telemarketing robocalls.

12.     Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

13.     Consumer complaints about this conduct have only increased since then.  "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today and Defendants' conduct in this case is a good reason why.

14.     The TCPA and implementing FCC regulations thus prohibit, the use of an "automatic telephone dialing system,"[1] artificial voice, or prerecorded voice in telemarking calls and advertising calls to cellular telephone numbers in the absence of an emergency or

---

[1]"A predictive dialer constitutes an 'automatic telephone dialing system' and is subject to the TCPA's restrictions in the use of autodialers." *Blow v. Bijora, Inc.*, 855 F.3d 793, 801 (7th Cir. 2017), quoting *In re Rules and Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 566 (2008).

the "prior express written consent" of the called party. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2).

15.     In addition, they prohibit the use of an artificial voice or prerecorded voice in telemarketing calls and advertising calls to residential telephone numbers in the absence of an emergency or the "prior express written consent" of the called party. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).

16.     "Prior express written consent" is defined as:

"an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(8).

17.     Such consent "shall include a clear and conspicuous disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."

*Id.*

18.     Under the FCC's rules, the entity that initiates prohibited telephone calls is directly liable for the calls. *In re Dialing Services, LLC*, 29 FCC Rcd. 5537, 5542-43 (2014). "A person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *Id.*  Such steps include, but are not limited to: (1) providing a software platform for making robocalls; (2) leasing or otherwise securing telephone connections for

making robocalls; (3) purchasing [lead] lists; (4) providing technical support; (5) reviewing and/or editing messages; (6) reviewing phone numbers to determine if they are valid; (7) transmitting the calling party's number to be displayed by the call recipient's caller identification services; (8) storing the prerecorded message on a server; (9) playing a recorded message to a called party; (10) detecting whether a call is answered by a live person or by an answering machine; (11) providing reports of call history, results, and polling; and (12) dialing telephone numbers." *Shamblin v. Obama for Am.*, 2015 U.S. Dist. LEXIS 50989, *12-13 (M.D. Fla. 2015), citing *In re Dialing Services, LLC*, 29 FCC Rcd. at 5543-44 (2014)

19.     In addition, the entity on whose *behalf* prohibited calls are made is vicariously liable for the calls under principals of classical agency or actual authority, apparent authority, and ratification. *In re Dish Network LLC*, 28 FCC Rcd. 6574, 6584 (2013).

## GENERAL FACTUAL ALLEGATIONS

20.     GoHealth and Norvax are engaged in a joint venture of health insurance telemarketing and will be referred to herein as "GoHealth Defendants."

21.     GoHealth Defendants provide "an outsourced carrier customer enrollment platform" that "works with over 100 health insurance carriers and more than 20,000 licensed agents across the United States."

22.     GoHealth Defendants sell leads to health insurance carriers, agents, and brokers across the country, including defendant BCBSFL to initiate telemarketing calls advertising the sale of health insurance to those leads.

23.     In addition, GoHealth Defendants initiate advertising and telemarketing calls advertising the sale of health insurance to those leads on behalf of numerous health

insurance carriers across the country, including BCBSFL.

24.     GoHealth Defendants run two lines of outbound dialing businesses relevant here, which are the business process outsourcing (BPO) line of business and Broker line of business.

**BPO Line of Business**

25.     In the BPO line of business, GoHealth Defendants contract directly with health insurance carriers who wish to telemarket their health insurance policies, including BCBSFL.

26.     For the BPO line of business, GoHealth Defendants and their respective carrier clients (including BCBSFL) together initiate advertising and telemarketing calls through an autodialer, which the GoHealth Defendants advertise as a "predictive dialer" that "automates outbound dialing," and which results in a "lowered cost-per-lead and higher conversion rates" (hereinafter referred to as the "Predictive Dialer").

27.     According to the same advertisement, the Predictive Dialer can "automatically leave your pre-recorded message of your choice."

28.     GoHealth Defendants and their respective insurance carrier clients (including BCBSFL) together use the Predictive Dialer to contact "leads" that GoHealth Defendants provide to the carrier.

29.     GoHealth Defendants and their respective insurance carrier clients (including BCBSFL) together generate dialing campaigns designed to reach those leads.

30.     The Predictive Dialer detects whether or not a call is answered, and if so, transfers the call to an employee of GoHealth and/or Norvax who attempts to make the sale

on behalf of the insurance carrier, including BCBSFL.

31.     GoHealth Defendants provide the insurance carrier (including BCBSFL) with detailed reporting of calling rates, dispositions, and sales.

32.     The carriers (including BCBSFL) profit from the sales made during these calls and accept the benefits knowing that automatic telephone dialing systems were used to make such calls without possessing prior express written consent.

**Agent/Broker Line of Business**

33.     In the second line of business, GoHealth Defendants jointly operate an autodialer platform called the "Broker Dialer" together with insurance agents and brokers across the country who also wish to use leads from GoHealth Defendants to telemarket health insurance policies on behalf of carriers, including BCBSFL.

34.     GoHealth Defendants describe the Broker Dialer as an "automatic dialer tool" that "allow[s] users to sequentially dial out to internet leads / imported leads[.]"

35.     According to GoHealth Defendants, "upon reaching a prospect's voicemail, Broker Dialer will automatically leave your prerecorded message of your choice."

36.     GoHealth Defendants and their respective insurance agent/broker clients together generate dialing campaigns designed to reach the leads that GoHealth provided.

37.     GoHealth Defendants and their respective insurance agent/broker clients together initiate calls through the Broker Dialer to those "leads" in order to sell health insurance on behalf of carriers, including BCBSFL.

38.     The Broker Dialer detects whether or not a call is answered, and if so, transfers the call to the insurance agent or broker, who attempts to sell health insurance

policies on behalf of carriers across the country, including BCBSFL.

39.　　GoHealth Defendants provide their agent and broker clients with detailed reporting of calling rates, dispositions, and sales.

40.　　The insurance carriers (including BCBSFL) profit from the sales made during these calls and accept the benefits knowing that automatic telephone dialing systems were used without prior express written consent.

## FACTS SPECIFIC TO PLAINTIFF

41.　　GoHealth Defendants sold Beck's contact information to defendant BCBSFL and to various insurance agents and brokers across the country.

42.　　On April 24, 2014, at approximately 9:24a ET, Beck received a telephone call to his cellular telephone from telephone number (800) 876-2227 (hereinafter, "First Call").

43.　　BCBSFL and/or GoHealth Defendants use the number (800) 876-2227 to telemarket BCBSFL health insurance policies.

44.　　BCBFSL provides that telephone number as a contact number on its website.

45.　　Beck has never had a health insurance plan with BCBSFL.

46.　　BCBSFL and/or GoHealth Defendants made the First Call to Beck's Cellular Telephone, (727) XXX-1449 (hereinafter, "Cellular Telephone"), using the Predictive Dialer or a similar system.

47.　　Beck uses the Cellular Telephone number in his home primarily for personal or residential purposes.

48.　　Beck answered the First Call and had to wait a few moments for a live person to join the auto-dialed call.

49.     Beck spoke with a woman who identified herself as being a BCBSFL representative.  She further claimed that she was calling because Beck had "requested information about health insurance."

50.     Beck advised the BCBSFL representative that he did not request information about health insurance and had been with his current health insurance provider for the last twelve years.

51.     The BCBSFL female representative then advised Beck that she would take him out of its "system" and terminated the call.

52.     On April 24, 2014, at approximately 10:30a ET, Beck received another telephone call to his Cellular Telephone from telephone number (727) 799-0231 (hereinafter, "Second Call").

53.     GoHealth Defendants initiated the Second Call using the Broker Dialer or a similar system.

54.     When Beck answered the Second Call, Beck spoke to "Bill," who claimed that he was calling because Beck "recently requested information on health insurance."

55.     Beck advised Bill that he had not requested any health insurance information and advised Bill of the BCBSFL call he previously received.

56.     Suspicious of how he had received two health insurance calls out of the blue, Beck asked Bill how he had received his contact information.  Bill replied that Beck's "name was on a sales-lead list that 'Norvax' sold to him."

57.     Beck advised Bill that he had not requested such information and then terminated the call.

58.     On or about April 24, 2014, at approximately 10:38a ET, Beck received a

third call to his Cellular Telephone, from telephone number (855) 233-4635 (hereinafter, "Third Call").

59.     GoHealth Defendants use the number (855) 233-4635 to place health insurance telemarketing calls on behalf of BCBSFL and/or other insurance carriers.

60.     GoHealth Defendants used the Predictive Dialer or a similar system to place the Third Call.

61.     Go Health did not leave a message at the end of the Third Call.

62.     On or about April 24, 2014 at approximately 4:39p ET, Beck received a fourth call to his Cellular Telephone, from telephone number (855) 233-4635 (hereinafter, "Fourth Call").

63.     GoHealth Defendants used the Predictive Dialer or a similar system to place the Third Call.

64.     Beck answered the Fourth Call.  After a pause and hearing a click, Beck was eventually connected with a live person, "Darla" who, like the other callers before her, claimed that she was calling because Beck had "recently requested information on health insurance."

65.     Beck advised Darla that he had not requested such information and requested how she got his number.  Darla replied that she would "take [Beck] out of the system" and hung up the phone before Beck could gather any more information on the source of the call or on the information Darla obtained to contact him.

66.     Beck called the (855) 233-4635 number to try and verify he was removed from its systems, and heard the following automated message:

> Due to high call volume for the enrollment deadline, wait
> times are substantially long.  But there is good news, the

> government has allowed for a special election period and
> extended enrollment through April 15 in certain
> circumstances. Simply enter your phone number on your
> phone's keypad and we'll contact you after April 1st to
> attempt your enrollment, should you qualify. By leaving
> your phone number, you are consenting to receive a follow-
> up call from a GoHealth marketplace representative via
> automatic telephone dialing system. Please enter your ten-
> digit phone number followed by the pound sign now.

67.    GoHealth Defendants' automated message and system did not connect Beck

with a live representative or operator. Further, it gave Beck no option to do so without

forcing him to provide purported "consent" for a follow up call.

68.    On or about June 17, 2014, at approximately 3:30p ET, Beck received a fifth

call to his Cellular Telephone, from telephone number (727) 405-5759 (hereinafter, "Fifth

Call").[2]

69.    GoHealth Defendants used the Broker Dialer or a similar system to place the

Fifth Call.

70.    After answering the Fifth Call, Plaintiff spoke to "Karen" who claimed that

she was calling Beck regarding the "health insurance information he requested."

71.    GoHealth Defendants thereafter repeatedly used the Broker Dialer or a

similar system to initiate prerecorded health insurance telemarketing calls to Beck's Cellular

Telephone number from (704) 220-1722 from June 2014 to September 2014.

72.    These prerecorded messages state:

> "healthcare, assured health care, and us health are calling to inform you of our
> new, low-cost, high quality health and dental plans. Press one and act now to
> receive a quote and see which plan is the best for you. We do accept pre-
> existing conditions and promise the lowest rate. Press one now to speak to
> one of our friendly representatives or press two to be taken off this list."

---

[2] While (727) 405-5759 was the telephone number that appeared on Beck's Cellular Telephone caller I.D.,
an immediate return call to such number does not ring through to any valid extension.

73.     BCBSFL and/or GoHealth Defendants also repeatedly used the Predictive Dialer, Broker Dialer, or a similar system to initiate prerecorded health insurance telemarketing calls to Beck's Cellular Telephone number from various telephone numbers between May 2016 and January 2017.

74.     These prerecorded messages state:

"cross blue shield calling to inform you of our new, low-cost, high quality health plan.  Press one and act now to speak with a blue cross agent.  To stop further notices, press two to be placed on the do-not-call list."

75.     Beck did not provide "prior express written consent" to receive any of the calls described above.

76.     Defendants' calls harmed Beck by violating his rights under the TCPA.

77.     Defendants' calls harmed Beck by causing the very harm that Congress sought to prevent - a "nuisance and invasion of privacy."

78.     Defendants' calls harmed Beck by trespassing upon and interfering with Beck's rights and interests in Beck's cellular telephone.

79.     Defendant's calls harmed Beck by intruding upon Beck's seclusion.

80.     Defendants' calls harmed Beck by causing Beck aggravation and annoyance.

81.     Defendants' calls harmed Beck by wasting Beck's time.

82.     Defendants' calls harmed Beck by depleting the battery life on Beck's cellular telephone.

83.     Defendants' calls harmed Beck by occupying space in his voicemail system.

## CLASS ACTION ALLEGATIONS

84.     Beck brings this action individually and on behalf of all other persons

similarly situated (hereinafter, "the Classes") pursuant to Federal Rule of Civil Procedure 23.

85.     Beck proposes the following Class definitions, subject to amendment as appropriate:

Auto-Dialed Calls Class

All persons within the United States subscribing to a cellular telephone number to which GoHealth Defendants initiated a telephone call for health insurance marketing purposes through the Predictive Dialer, Broker Dialer, or similar system, from April 23, 2014 through the date the Court rules on Plaintiff's motion for class certification, whose telephone number was obtained prior to July 9, 2015.

Auto-Dialed Calls BCBSFL Class

All persons within the United States subscribing to a cellular telephone number to which GoHealth Defendants or BCBSFL or both initiated a telephone call in order to market BCBSFL health insurance through the Predictive Dialer, Broker Dialer, or similar system, from April 23, 2014 through the date the Court rules on Plaintiff's motion for class certification, whose telephone number was obtained prior to July 9, 2015.

Prerecorded Calls Class

All persons within the United States subscribing to a residential or cellular telephone number to which GoHealth Defendants a telephone call for health insurance marketing purposes using an artificial or prerecorded voice, from April 23, 2014 through the date the Court rules on Plaintiff's motion for class certification, whose telephone number was obtained prior to July 9, 2015.

Prerecorded Calls BCBSFL Class

All persons within the United States subscribing to a residential or cellular telephone number to which GoHealth Defendants or BCBSFL or both initiated a telephone call in order to market BCBSFL health insurance using an artificial or prerecorded voice, from April 23, 2014 through the date the Court rules on Plaintiff's motion for class certification, whose telephone number was obtained prior to July 9, 2015.

86.     Collectively, all these persons will be referred to as "Class Members."

Beck seeks to represent and is a member of each Class.

87.     Excluded from the Classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

88.     Beck does not know the exact number of Class Members, but Beck reasonably believes Class Members number, at minimum, to be in the thousands, if not tens of thousands, of people.

89.     Beck and all Class Members have been harmed by the acts of the Defendants.

90.     This Class Action Complaint seeks injunctive relief and money damages.

91.     The joinder of all Class Members is impracticable due to the size and relatively modest value of each individual claim.

92.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

93.     Further, the Classes can be identified easily through records maintained by Go Health Defendants, BCBSFL, and/or their telemarketing agents.

94.     There are well defined, nearly identical, questions of law and fact affecting all parties.

95.     There is a well-defined community of interest in the questions of law and fact involved affecting Class Members. Among the questions of law and fact which are common to the Classes, and which predominate over questions affecting individual Class Members, are the following:

a.        Whether the Predictive Dialer, Broker Dialer, or other systems used are automatic telephone dialing systems under the act;

b.        Whether Defendants' conduct was knowing and/or willful;

c.        Whether the form of consent that Defendants' purport to have obtained from the Class Members, if any, qualifies as Prior Express Written Consent under the FCC's rules.

96.      Beck asserts claims that are typical of each Class Member, as each are persons who received non-emergency telephone calls from Defendants with an automatic telephone dialing system, without Class Members' Prior Express Written Consent.

97.      Further, Beck will fairly and adequately represent and protect the interests of the Class.

98.      Beck has no interests which are antagonistic to the Class or to any Class Member.

99.      Beck has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

100.     A class action is the superior method for the fair and efficient adjudication of this controversy.

101.     Class wide relief is essential to compel the Defendants to comply with the TCPA.

102.     A Class Member's interest in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same

behavior in the future.

103.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all systemically and automatically dialed, and the Class Members, by definition, did not provide the Prior Express Written Consent, as required under the statute, to authorize such calls to their cellular telephones.

104.     Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to each Class as a whole appropriate.

105.     Moreover, on information and belief, Beck and Class Members allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### COUNT ONE:
### DIRECT LIABILITY FOR CALLS MADE IN VIOLATION OF
### 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2).

106.     Beck incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

107.     Defendants' initiated telemarketing calls to cellular telephone numbers using automatic telephone dialing systems and artificial or prerecorded voices without prior express consent.

108.     The foregoing acts and omissions constitute numerous and multiple violations of 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2).

109.     Defendants are each directly liable for their respective violations

because they each initiated calls by taking steps necessary to physically place the calls.

110.     As a result of the Defendants' violations, Beck and Class Members are entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute, pursuant to United States Code, Section 227(b)(3)(B), plus up to treble damages for each violation found to be willful or knowing.

111.     Beck and Class Members are also entitled to, and do seek, injunctive relief prohibiting the Defendants' conduct in the future as described below.

## COUNT TWO:
## DIRECT LIABILITY FOR CALLS MADE IN VIOLATION OF
## 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3)

112.     Beck incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

113.     Defendants' initiated telemarketing calls to residential telephone numbers using artificial or prerecorded voices without prior express consent.

114.     The foregoing acts and omissions constitute numerous and multiple violations of 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).

115.     Defendants are each directly liable for their respective violations because they each initiated calls by taking steps necessary to physically place the calls.

116.     As a result of the Defendants' violations, Beck and Class Members are entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute, pursuant to United States Code, Section 227(b)(3)(B), plus up to treble damages for each violation found to be willful or knowing.

117.     Beck and Class Members are also entitled to, and do seek, injunctive relief

prohibiting the Defendants' conduct in the future as described below.

## COUNTS THREE and FOUR:
### VICARIOUS LIABILITY FOR CALLS MADE IN VIOLATION OF
### 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2) (COUNT THREE)
### and
### 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3) (COUNT FOUR)

118.    Beck incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

119.    In addition to being directly liable, BCBSFL is vicariously liable for the calls under theories of actual authority, apparent authority, and ratification.

120.    BCBSFL and their agents contracted with GoHealth Defendants for the specific purposes of placing automated and prerecorded telemarketing calls to leads.

121.    BCBSFL and their agents controlled the campaign parameters for these dialing campaigns and chose the messages and scripts that would be used during these calls.

122.    The calls were placed with the knowledge and approval of BCBSFL and were placed under BCBSFL's control.

123.    By hiring GoHealth Defendants to telemarket their services and products through autodialers and prerecorded voices, BCBSFL "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

124.    Similarly, GoHealth Defendants "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of BCBSFL, as described in the Restatement (Third) of Agency.

125.    One of GoHealth Defendants' websites informed prospective customers

that "many Blue Cross and Blue Shield Companies" are among the health insurance carriers that "have the health plan for you."

126.    The same website advertises BCBSFL insurance specifically as providing "industry-leading health insurance programs," uses BCBSFL's trademarked logos and likenesses, and allows consumers to enter their personal information in order to apply for a BCBSFL plan.

127.    The representatives who dialed calls from (800) 876-2227 stated that they were representatives of BCBSFL

128.    Further, many of the prerecorded messages placed to the Class Members expressly state that the recipient can "press one" to speak to a blue cross agent.

129.    In addition, by providing their lead information, call script information, and dialing campaign information to GoHealth Defendants, BCBSFL "allow[ed] the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products," as discussed in the May 2013 FCC Declaratory Ruling.

130.    BCBFSFL also ratified GoHealth Defendants' unlawful actions by knowingly accepting the benefits of the autodialed and prerecorded calls when they accepted leads from the Go Health Defendants.  These leads provided BCBSFL and its agents with additional business prospects and ultimately additional revenue and profit.

131.    BCBSFL was aware that these calls were made with automatic telephone dialing systems and/or prerecorded voices without prior express written consent and accepted the benefits of such calls anyway.

**PRAYER FOR RELIEF**

WHEREFORE, Beck requests that the Court enter judgment in his favor and favor of the Classes, and against Defendants for:

a.     A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.     An injunction requiring Defendants not to autodial any numbers obtained through means other than signed, prior express written consent that complies with the TCPA and FCC's rules.

c.     An injunction requiring Defendants to file quarterly reports of third party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to ensure that Beck and Class Members are not called in the future;

d.     An award of statutory damages for Beck and each Class Member in the amount of $500.00 for each and every call that violated the TCPA;

e.     An award of treble damages, as provided by statute, of up to $1,500.00 for Beck and each Class Member for each and every willful or knowing violation;

f.     An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Beck is a proper representative of the Classes, and appointing the lawyers and law firms representing Beck as counsel for the Classes;

g.     An award of Beck's attorneys' fees, litigation expenses and costs of suit; and

h.     Such further and other relief the Court deems reasonable and just.

i.      Beck, individually and on behalf of all others similarly situated, demands

trial by jury.

Respectfully Submitted,

/s/ Timothy J. Sostrin
**KEOGH LAW, LTD.**
Keith J. Keogh,
Timothy J. Sostrin
55 W. Monroe St. Ste. 3390
Chicago, IL 60603
(312) 726-1092 / (312) 726-1093
keith@keoghlaw.com
tsostrin@keoghlaw.com
*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff demands a trial by jury.

/s/ Timothy J. Sostrin
**KEOGH LAW, LTD.**
Keith J. Keogh,
Timothy J. Sostrin
55 W. Monroe St. Ste. 3390
Chicago, IL 60603
(312) 726-1092 / (312) 726-1093
keith@keoghlaw.com
tsostrin@keoghlaw.com
*Attorneys for Plaintiff*